The DENVER AND RIO GRANDE
WESTERN RAILROAD COMPANY
and Southern Pacific Company, Plaintiffs,

v.

UNITED STATES of America,
Defendant,
Interstate Commerce Commission

and

Oregon Short Line Railroad Company
and Union Pacific Railroad Company, Intervening Defendants.

Civ. A. No. C–1699.

United States District Court,
D. Colorado.

May 11, 1970.

Ernest Porter, John S. Walker, Denver, Colo., for plaintiffs.

Richard W. McLaren, Asst. Atty. Gen., by John H. D. Wigger, Department of Justice, Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., for defendant United States of America.

Fritz R. Kahn, Acting General Counsel, Interstate Commerce Commission, Washington, D. C., Manny H. Smith, Barry Roberts, Interstate Commerce Commission, Washington, D. C., for intervening defendant Interstate Commerce Commission.

William P. Higgins, Omaha, Neb., C. D. Knowles, Denver, Colo., for intervening defendants Oregon Short Line R. Co. and Union Pac. R. Co.

Before LEWIS, Circuit Judge, and BOHANON and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This action was commenced by plaintiffs, Denver and Rio Grande Western Railroad Company (DRGW) and Southern Pacific Company (SP) against the United States, seeking review pursuant to 28 U.S.C. § 1336 of an order of the Interstate Commerce Commission. A three-judge court was convened as required by 28 U.S.C. §§ 2284 and 2325. The Oregon Short Line Railroad Company (OSL) and the Union Pacific Railroad Company (UP), applicants in the proceedings before the Commission, were permitted to intervene as parties defendant.

In June 1967, OSL and UP applied to the Interstate Commerce Commission for a certificate of public convenience and necessity for the construction and operation of a 12.39 mile extension of trackage from their main line to a developing industrial area near the Great Salt Lake, Utah. SP and DRGW were permitted to intervene as protestants before the Commission. The bases of their opposition were that: (1) SP claimed to be a carrier already in the area; (2) there was no necessity for an additional carrier; and (3) competition resulting from the granting of the OSL–UP application would have substantial detrimental effect on both DRGW and SP.

Evidence was presented before a Commission hearing examiner who recommended that the application be denied because SP was already adequately serving the area and, therefore, the services of an additional carrier were unnecessary. The Commission did not accept the recommendation of the hearing examiner, but rather determined that applicants were entitled to a certificate. The Commission held that the present and future public convenience and necessity required that the OSL–UP application be granted. 334 I.C.C. 267 (1969). It is this order which the plaintiffs now challenge.

At this juncture there is little factual dispute. The area to be served by the proposed extension of the UP line is known as Little Mountain, located near the Great Salt Lake. It is the anticipated freight from this source which has

generated this controversy. Although presently Little Mountain is substantially undeveloped, construction has begun on facilities for the extraction and processing of minerals, such as magnesium chloride, potassium sulphate and sodium sulphate from the Great Salt Lake. By 1974 over 1,000,000 tons per year of such materials will be shipped from Little Mountain to markets throughout the country.

At the present time the UP main line runs in a north-south direction, through Ogden and Hot Springs, Utah. This line is some 13 miles east of Little Mountain development area (see map, Appendix I). UP maintains and operates an industrial spur which extends 4,650 feet west of the main line at a point just north of Hot Springs. The proposed extension would add to this spur an additional 12.39 miles of track, terminating at Little Mountain.

The SP main line runs in an east-west direction and passes directly south of Little Mountain. The eastern terminus of this line is at Ogden, some 15 miles east of Little Mountain, and its western terminus is at San Francisco. Subsequent to the filing of the UP–OSL application here in question, SP constructed a 1.7 mile spur from its main line into the industrial development area. At the present time this spur is not in use and future additions to the spur will be necessary to connect it with the various plant facilities under construction in the area.

The crucial issue according to SP is that it is, contrary to the finding of the Commission, a carrier serving the area and hence the action of the Commission in granting the UP certificate was arbitrary. This SP contention is based on its geographic contiguity—the fact that it acquired a large tract of land there in 1965 and has now built a spur to the edge of Little Mountain. According to SP this gives it a preemptive right to exclude UP, whereby the Commission had no discretion but to deny the UP application. However, SP is not now actually serving the area and the Commission treated it as new territory not being served by any railroad; that even if it were within the SP service area it was not exclusively so. At the same time the Commission and the parties proceeded on the assumption that SP was, due to its location, exempt from the requirement of a certificate and could serve the area once operations commenced. We do not see the question as one of pure law as SP contends. Rather, we regard it as a factual matter properly determinable by the Commission (and not the examiner).

The Commission found that UP could provide more efficient and economic service in transporting minerals from the Little Mountain area to virtually all points of destination. UP would be able to provide single-line service north to the Pacific Northwest, south to Southern California and east through Ogden to the Midwest. Although SP could provide single-line service to Central California, freight bound for other points would have to be transferred to other carriers at the Ogden interchange. Thus, southbound and northbound freight would be transferred to UP at Ogden, while eastbound freight would be interchanged with either UP or DRGW. Even if the UP–OSL application were denied, some 65 to 75 percent of traffic from Little Mountain would ultimately be handled by UP in interchange.

As a result of SP's joint-line service, using the interchange at Ogden, SP transit time from Little Mountain to Portland, Oregon would be approximately 20 hours more than that of UP; SP transit time to Los Angeles would be some 15 hours more than that of UP. Transit time for both UP and SP to Council Bluffs, Iowa would be approximately the same.

Construction cost of the proposed UP extension is estimated at $1,250,000.00. The Commission found that UP would have the opportunity to net approximately $850,000.00 per year and thus recoup its investment within two years.

Furthermore, the Commission determined that SP would not be substantially harmed by the proposed UP extension because SP's present traffic would not be diminished and the business generated by the Little Mountain facilities would be sufficient to sustain both roads.

Based upon the above evidence, the Commission arrived at the following conclusions in granting the OSL–UP certificate of convenience and necessity:

(1) Little Mountain will be *more* efficiently served under the UP proposal, and certain needs of the area cannot be met under SP's joint-line arrangement;

(2) SP is not already a carrier in the Little Mountain area;

(3) SP will not be harmed by the proposed UP extension;

(4) UP will not be weakened by the expenditures for the extension because the cost is *de minimus* relative to UP's total assets. The added cost is justified by the resulting public benefit;

(5) The evidence indicates that single-line service, avoiding the Ogden interchange, would be inherently faster and more efficient;

(6) Rate and service competition between UP and SP with respect to Little Mountain will provide greater assurance of dependable service and economical rates;

(7) Two lines will make the area more attractive to new industries, and thus serve to generate even more traffic.

■ Our function as a reviewing court is to determine whether the Commission's action is supported by substantial evidence on the record as a whole. Illinois Central R. R. Co. v. Norfolk & Western Ry. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Nebraska ex rel. Nebraska State Ry. Comm. v. United States, 255 F.Supp. 718 (D.Neb. 1966). As stated in N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939) substantial evidence is that amount of evidence which would "justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

■ Plaintiffs contend that the Commission's finding that SP is not a carrier in the area is unsupported by substantial evidence. They claim that SP is a carrier in the Little Mountain area and, therefore, entitled to carry all the traffic it can economically and efficiently handle. Whether a carrier is "in the area" is a factual issue to be determined from the evidence.

There is substantial evidence to support the conclusion of the Commission that SP is not a carrier in the area. The SP spur does not serve any existing industry in the area; Little Mountain presently generates no substantial traffic; and the SP main line is not significantly closer to Little Mountain than the UP main line. It is true that SP owns real estate in the area and has encouraged industrial development at Little Mountain, but this is also true with respect to UP. There may be evidence in the record from which the opposite conclusion, namely that SP is a carrier in the area, could be drawn, however, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); Illinois Central R. R. Co. v. Norfolk & Western Ry. Co., *supra.*

■ Congress has provided that the Commission may not permit extension of an *existing line* unless such extension is required by the present or future public convenience and necessity, 49 U.S.C. § 1(18). Even if SP is or will be a carrier in the general area of Little Mountain, this fact is not

determinative of whether the public convenience and necessity require the services of another carrier. Other factors which may be considered include inadequacy of present or future service provided by the carrier already in the area, the desirability of competition, the desirability of different kinds of service, and the desirability of improved service. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H.1964); *See also* Petroleum Carrier Corp. v. United States, 258 F.Supp. 611 (M.D. Fla.1966). The evidence in the present record with respect to the above factors clearly supports the Commission's conclusion that public convenience and necessity will be best served by granting UP's application.

■■ Plaintiffs argue that a carrier may not be granted a certificate of convenience and necessity unless it is shown that an "urgent necessity" exists for the proposed service. However, we feel that a literal interpretation of the term "ne-

cessity" would frustrate the statutory scheme envisioned by Congress. Petroleum Carrier Corp. v. United States, *supra;* Border Express v. United States, 120 F.Supp. 23 (D.Mass.1954). In the present context, "necessity" must be construed to mean a substantial need for present or future service which is not or cannot be adequately supplied by existing carriers or facilities. In making such a determination the Commission, with its expertise and specialized knowledge, is allowed broad discretion and the scope of judicial review is exceedingly narrow. Border Express v. United States, *supra.* After reviewing the record, we must conclude that the Commission's action does not constitute an abuse of discretion and is based upon substantial evidence on the record as a whole.

Based upon the foregoing, plaintiffs' claim for relief is denied, and the clerk is ordered to enter judgment for defendant.