**LEESONA CORPORATION, Plaintiff,**

v.

**The DUPLAN CORPORATION et al.,
Defendants.**

**Civ. A. No. 4315.**

United States District Court,
D. Rhode Island.

Aug. 7, 1970.

Edward F. Hindle, John V. Kean, John H. Blish, and James P. Kelly, Edwards & Angell, Providence, R. I., for plaintiff.

Edwin H. Hastings, and DeWitte T. Kersh, Jr., Tillinghast, Collins & Graham, Providence, R. I., for moving defendants.

PETTINE, District Judge.

On October 9, 1969, Leesona, a Massachusetts corporation with its principal place of business in Rhode Island, commenced suit in Rhode Island Superior Court against some sixty corporate defendants, seeking declaratory and other equitable relief. It was subsequently removed to this court. Several of the named defendants moved to dismiss on a number of grounds, and on April 21, 1970, this Court rendered an opinion dismissing the suit, because the state court had lacked jurisdiction over the subject matter, and therefore this Court had no derivative jurisdiction upon removal. (Leesona Corp. v. Concordia Mfg. Co., Inc., 312 F.Supp. 329, D.R.I.).

The instant action was therefore commenced by Leesona in this court on April 28, 1970, against forty-nine corporate defendants. Plaintiff seeks recovery of allegedly past due royalties and a court order requiring payment of future royalties which allegedly will come due under certain patent licensing agreements. On August 30, 1969, before Leesona had brought any suit upon these patents, Kayser-Roth Corporation and twenty-six other corporations (all twenty-seven of whom are among the forty-nine defendants in the action before this court) brought suits[1] against Leesona in the United States District Court for the Eastern District of New York, seeking a declaratory judgment of non-infringement of certain U. S. Letters patent[2] held by Leesona. Those twenty-seven corporations had been granted non-exclusive licenses under those patents by Leesona, but they had allegedly terminated the licenses by cancellation of future royalty payments on August 29, 1969. The plaintiffs in that action also alleged antitrust violations relating to misuse by Leesona of the patents in question,[3] for which they sought treble damage recovery. As part of its answer to these complaints, Leesona presented the affirmative defense of plaintiff's default on royalty payments. Furthermore Leesona counterclaimed for patent infringement and breach of the contractual obligation to make royalty payments. This Court today decides several motions which have been briefed and argued exhaustively to this Court. Thirty-nine defendants have joined in a motion to dismiss for lack of personal jurisdiction and in an alternative motion to stay and/or transfer the pending action. One defendant has separately made similar motions.[4] Nine defendants have not joined in these motions at all.

### MOTION TO DISMISS

My denial of the earlier motion to dismiss is controlling here, for I find no facts which materially distinguish this motion from my earlier ruling.

### MOTION TO TRANSFER

Defendants' motion to transfer this action to the Eastern District of New York is based upon 28 U.S.C. Section 1404(a), which provides:

"§ 1404. Change of Venue.

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought.*" (emphasis added)

Passing for the moment the question of whether "the convenience of parties and witnesses" and "the interest of justice" favors the transfer requested by the defendants, this Court must first determine whether the Eastern District of New York is a district in which this action "might have been brought." Counsel have agreed that 1404(a) requires that the proposed transferee forum have jurisdiction over the subject matter of the action, that venue be prop-

---

1. Twenty-two complaints were filed by single corporations and two complaints were brought by more than one corporate plaintiff. After Leesona brought the instant action, two more complaints were filed in New York by single corporations. Sauquoit Fibers Co. has since dismissed its New York action and has commenced suit in the Eastern District of Pennsylvania. These remaining twenty-five actions have been consolidated for pre-trial purposes by court order. The court reserved decision upon the remainder of the motion by Leesona for consolidation for all purposes.

2. Specifically the following:
   No. 2,803,105
   No. 2,803,108
   No. 2,803,109
   Each relates to a method or apparatus for processing yarn.

3. The complaint in Collins & Aikman Corp. v. Leesona Corp., 69 C. 1504, does not allege antitrust violations.

4. Because that defendant Sauquoit Fibers Co., is in a somewhat unique position, its motions will be treated separately and this opinion will not apply to it except as indicated in the separate opinion to be entered by this court.

er there and that the defendants must be amenable to service of process by the transferee court. The moving defendants assert that this action might have been brought in the Eastern District of New York, as follows:

(1) Plaintiff could have brought a counterclaim to all the pending suits in New York, insofar as the original twenty-seven plaintiffs therein are among the forty-nine defendants here;[5]

(2) Twelve of the remaining defendants here have entered a stipulation with this Court to be bound by the judgment of the New York Court; (3) Certain of the defendants here, including some who brought suit in N. Y., some who have entered stipulations in N. Y., and some who have done neither, are subject to the personal jurisdiction of the New York Court, by virtue of their doing business there.

The first issue which this Court must face, therefore, is whether the requirement that the proposed transferee forum be one in which the action "might have been brought" is satisfied by the opposing party's right to bring a counterclaim to a previously-instituted action, which Leesona has already done in New York.

A consideration of relevant case law upon defendants' argument must begin with Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), in which the Supreme Court consolidated two cases for decision. In both, a District Court granted transfer of an action to a forum in which neither venue nor service of process would have been proper at the time the action was instituted,

but in which defendants had subsequently consented to be sued. In rejecting that interpretation of 1404(a), the Court adopted the following language of one of the Circuit Court opinions:

"If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where [the action] might have been brought'. If he does not have that right, *independently of the wishes of defendant,* it is not a district 'where it might have been brought', and it is immaterial that the defendant *subsequently* [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum]. 260 F.2d at page 321, and 261 F.2d at page 469." (emphasis added) 363 U.S. at 344, 80 S.Ct. at 1090.

■ Leesona contends that as applied to the situation before this Court, *Hoffman* means that the Eastern District of New York must be a court in which it could have sued these defendants originally, as of right, and independently of their filing of an action in which Leesona concededly had a right to counterclaim at the time it instituted this Rhode Island suit. There is some thrust to the argument that the right to counterclaim is not "independent of the wishes of defendant" and therefore does not meet the test of Section 1404(a). However, this Court feels that the right to bring a counterclaim against a defendant in the proposed transferee forum, if that right existed at the time the action which is proposed to be transferred was instituted, qualifies that forum as one in which suit "might have been brought."

---

5. Two of the defendants here, Beaunit Corp. and Sondra Mfg. Co., Inc., filed suit in the Eastern District of New York subsequent to the date upon which Leesona brought the instant action. Defendants have suggested that Leesona might have counterclaimed in N.Y. against these corporations also. Aside from the issue of whether the right to counterclaim is sufficient to satisfy § 1404(a), (See text of this opinion, *infra*), that

argument must be rejected because the determination of where suit "might have been brought" must be made as of the time this action was commenced—I.E., April 28, 1970 (See discussion of Hoffman v. Blaski in text of this opinion, *infra*). Clearly at that time Leesona could not have filed a counterclaim against these corporations because they had not yet filed an original action.

I reach this result because such a situation is not afflicted with the "gross discrimination" in choice of forum with which the Court in *Hoffman* was concerned.[6] Here, on April 28, 1970, Leesona had the choice, at least with respect to twenty-seven of these defendants, of bringing suit in Rhode Island or counterclaiming for royalty payments in the New York declaratory judgment action. This is a materially different situation from *Hoffman,* because there is no attempt here by defendants *subsequent* to April 28, 1970 to create a proposed transferee forum in which Leesona could not have sued on that date.

In so holding, this Court recognizes that there exists a very limited amount of Federal District Court authority, which is *contra.* A situation analogous to that facing this Court arose in New York Central Railroad Co. v. United States, 200 F.Supp. 944 (S.D.N.Y. 1961), in which defendant raised the argument that where New York plaintiff had a specific statutory right, under 28 U.S.C. § 2323, to appear as intervenors in a prior Maryland case, that was sufficient to make the latter forum one in which suit "might have been brought." The Court never reached the question, for it decided that plaintiff's specific claims could not be raised in the Maryland suit. However, the Court did say in dictum, that since Section 1404(a) speaks of a district where "it" i. e., "the action," might have been brought, the mere right to assert claims as an intervenor is insufficient to qualify the proposed transferee forum:

"Plaintiff's third contention, also, (that the mere right to assert claims is insufficient) is not to be readily

dismissed, especially in view of the tendency to give a rather literal reading to 1404(a) evidenced by (Hoffman v. Blaski)." 200 F.Supp. at 948.

Similarly, in Foster-Wheeler Corp. v. Aqua-Chem, Inc., 277 F.Supp. 382 (E. D.Pa. 1967), the Court reached a result contrary to the result I reached today. In granting a stay of the declaratory judgment proceeding before it, in favor of a patent infringement suit filed earlier in another forum, the Court remarked, "(t)he preliminary issue of transfer scarcely needs comment." 277 F.Supp. at 383. It added, however:

"Contrary to defendant's contention, the hypothetical ability of (the Pa. plaintiff) to file a counterclaim in the Louisiana suit previously instituted by (defendant) against (plaintiff's indemnity) in no way qualifies that district under § 1404(a) as one to which suit may properly be transferred." 277 F.Supp. at 384.

Continuing, the Court found that the language of *Hoffman, supra,* bars transfer to another forum under 1404(a) unless the actual suit in question could have been brought there at the time when it was filed.

Though not relied upon by counsel this Court has not overlooked the following footnote remark in the dissenting opinion of Justice Douglas in Penn-Central Merger & N & W Inclusion Cases, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968):

"Our decisions in Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, and VanDusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945, indicate that § 1404(a) permits

---

**6.** The exact language of the court was as follows:

"The thesis urged by petitioners would not only do violence to the plain words of § 1404(a), but would also inject gross discrimination. That thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the *defendants* and in which they were willing to waive their statutory defenses as to venue and jurisdic-

tion over their persons, regardless of the fact that such transferee District was not one in which the action 'might have been brought' by the plaintiff. Conversely, that thesis would not permit the court, upon motion of the *plaintiffs* and a like showing of convenience, to transfer the action to the same district, without the consent and waiver of venue and personal jurisdiction defenses of the defendants." 363 U.S. at 344, 80 S.Ct. at 1090.

transfer only to a district court in which the plaintiff would have been entitled, without regard to consent by the defendant to bring his action originally. Moosic and Scranton could not have brought an *original action* in New York." (emphasis added) 389 U.S. at 545 n. 10, 88 S.Ct. at 631.

This Court finds this considered remark to be of limited assistance in reaching a decision on the question presented here, because the body of Justice Douglas' dissenting opinion related to the question of whether the "parties bringing such action" resided in the proposed transferee court so as to satisfy 28 U.S.C. § 1398.[7] I find, then, that it is a remark which is simply not addressed to the question of whether the right to bring a counterclaim meets the 1404(a) requirement in issue.

In arriving at the interpretation of Section 1404(a) set forth above, I have kept in mind the Supreme Court's admonition in VanDusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), that:

"This remedial purpose — the individualized, case-by-case consideration of convenience and fairness — militates against restricting the number of permissible forums within the federal system." 376 U.S. at 622, 84 S.Ct. at 812.

Thus, as to twenty-five of the twenty-seven defendants who have instituted actions in the Eastern District of New York prior to April 28, 1970,[8] I hold that that court is one in which Leesona might have brought suit by means of counterclaim upon the license claims in issue here,[9] and since Leesona has properly conceded that the New York court would have subject matter jurisdiction of those claims, 1404(a) is satisfied as to them.[10]

■ As to twelve of the fourteen remaining defendants who join in this motion to transfer, the argument is unavailing that because of their stipulation to be bound by the New York judgment, which stipulation was entered subsequent to the time Leesona brought this action, the Eastern District is a forum in which Leesona might have brought suit against them. Hoffman v. Blaski, *supra*, clearly rejects such an argument of jurisdiction in the transferee court arising out of a defendant's subsequent consent to be sued there.

The question remains, therefore, whether Leesona could have sued in the Eastern District of New York any of the remaining fourteen defendants who join in this motion. As noted above, both venue and service of process must have been proper in the transferee forum. Considering first the issue of venue, this Court looks to 28 U.S.C. § 1391, which governs cases such as the instant action, based on diversity of citizenship:

"§ 1391 Venue Generally

(a) A civil action wherein jurisdiction is founded only on diversity of citizen-

---

7. 28 U.S.C. § 1398 provides, in part:
  "§ 1398. Interstate commerce commission's orders
  (a) Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action."

8. One of the New York plaintiffs, Collins & Aikman Corp., is not a moving party here, and this court could only transfer the action as to Collins if it moved *sua sponte*. For a discussion of that possibility, see note 18, *infra*.

A second New York plaintiff, Sauquoit Fibers Co., has filed separate motions. See note 4, *supra*.

9. Since those twenty-seven corporations have already properly invoked the jurisdiction of the New York court as plaintiffs, the requirements as to venue and service of process in the transferee forum are not in issue here on a counterclaim against them.

10. I have found it more logical and convenient to face the issue of whether a partial transfer, as to only some defendants, is possible, after a full consideration of whether suit is available as to all, see text of opinion *infra*.

ship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

\*    \*    \*    \*    \*    \*

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The venue provisions are further liberalized by 28 U.S.C. § 1392, which provides:

"§ 1392 Defendants or property in different districts in same State.

(a) Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts. \*    \*    \* "

Thus Section 1392 provides that if venue was proper in the Eastern District of New York as to any one defendant, it is proper as to all other defendants who reside anywhere in the State of New York. Since I have already found proper venue in the Eastern District of New York as to twenty-five defendants by means of a counterclaim against them, venue will be proper as to any of the remaining fourteen moving defendants who satisfy Section 1391(c).[11] As to five of them,[12] Leesona's own affidavits establish that they were either New York corporations or licensed to do business there, but as to the remaining nine there is some dispute surrounding the question of whether they are "doing business" in New York.

Since the moving party has the burden of proving that the interests of convenience and justice demand that the action should be transferred (see cases collected in 1 Moore's Federal Practice, § 0.145, p. 1778 n. 3 (1969 Supp.)), it is reasonable to place upon him also the burden of proving that venue is proper in the proposed transferee court. Here, the affidavit of defendants' counsel asserted that six[13] of the remaining nine moving defendants were doing business in the State of New York. Leesona has not controverted that assertion, so it must be taken as true. However, as to the final three moving defendants[14] there has been a complete failure of proof, and therefore I hold that venue would not have been proper in the Eastern District of New York as to them and that the latter forum would not have been one in which Leesona's action "might have been brought" against them. With venue determined to be proper in the Eastern District of New York as to eleven of the fourteen corporations which did not institute suits in New York but which have joined in this motion to transfer, it remains for this Court to determine whether the additional requirement of a 1404(a) transferee forum is met—amenability to service of process. Leesona has conceded, in a memorandum of law filed with this court, that " \*    \*    \* we can assume that those five defendants[15] who are alleged to be either incorporated or licensed to do business in the State of

---

11. As an additional ground for this court's decision, I find that the evidence submitted on these motions is sufficient to establish that at least one defendant, Kayser-Roth Corporation, was "doing business" in the Eastern District of New York, so as to make operative 28 U.S.C. § 1392.

12. 1) Beaunit Corporation
    2) Sondra Manufacturing Company
    3) United Merchants and Manufacturers, Inc.
    4) H. Warshaw & Sons, Inc.
    5) Firestone Tire & Rubber Co.

13. 1) Chadbourne, Inc.
    2) Grove Silk Company
    3) Hampshire-Designers, Inc.
    4) Roselon Industries, Inc.
    5) Southern Stretch Yarns, Inc.
    6) Standard-Coosa-Thatcher Company, Inc.

14. 1) Gaybourne Mills, Inc.
    2) Mills Yarn, Inc.
    3) Nytex Yarn Corporation

15. See note 12, *supra*.

New York may be served with process there * * *" This Court agrees.[16] Moreover, Fed.R.Civ.P. 4(e) provides, in pertinent part:

"Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

New York has such a long-arm statute, and it is found in Civil Practice Law and Rules Section 302 (McKinney's):

"§ 302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. Transacts any business within the state; or * * *."

■■ The New York Court of Appeals has consistently held that long-arm service of process under CPLR § 302 is available only when the cause of action arises out of purposeful activities carried on in New York, even if the defendant transacts other business in the state. See, e. g., Longines Wittnauer Watch Co. v. Barnes and Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). The only evidence which is before this Court in this regard is contained in an affidavit by Leesona's New York counsel. In it he alleges that none of the patented machinery upon which Leesona's claim for royalties is based was manufactured in New York, nor was any of it used by any of the defendants in New York, nor were any of the defendants' activities out of which Leesona's cause of action arose carried on in New York. Accepting those allegations as true, which I must do on the present state of the record, I find that service of process could not have issued out of the Eastern District of New York against those six remaining defendants [17] who are not plaintiffs in New York but have joined in this motion to transfer. Thus, as to them, the Eastern District of New York is not a forum in which Leesona might have brought suit against them, so a 1404(a) transfer is unavailable as to them. In summary, of the thirty-nine defendants who join in this motion to transfer, suit could have been instituted in the Eastern District of New York against only thirty and not against the other nine.[18] These findings present squarely to this Court the issue of whether transfer is available as to less than all of the named defendants.

Two cases are cited by defendants as authorities for severance and transfer. The first is Leesona Corp. v. Cotwool Mfg. Corp., Judson Mills Div., 308 F.2d 895 (4th Cir.), aff'g 204 F.Supp. 141 (W.D.S.C.1962), in which Leesona filed the first action against a sole defendant, Cotwool, in the Western District of South

---

16. See N.Y. Business Corporation Law, McKinney's Consol.Laws, c. 4, § 304, with respect to appointment of the Secretary of State as agent for service of process.

17. See note 13, *supra*.

18. Since there are at least nine defendants against whom transfer would be absolutely unavailable I need not reach the question of whether this court could transfer this entire action even against those defendants who have not made a 1404(a) motion.

It has been noted in this regard that "[A]lthough the language of the statute would seem to permit the court to transfer a case on its own initiative, without motion, no such transfer has been found." 1 Barron & Holtzoff, Federal Practice and Procedure § 86.1, at p. 409.

However, such a transfer was effected in Kearney & Trecker Corp. v. Cincinnati Milling Machine, 254 F.Supp. 130 (N.D.Ill.1966). It appears that Brotherhood of Locomotive Firemen & Engine-Men v. Central and Georgia Ry. Co., 411 F.2d 320 (5th Cir. 1969), may also be such a case, but that is unclear from the court's opinion.

Carolina for patent infringement. Subsequently Whitin Machine Works sought a declaratory judgment of patent invalidity and non-infringement, in the District of Massachusetts. Finally, Leesona added Whitin and another corporation as defendants in the South Carolina action. The Court of Appeals upheld the trial court's granting of a motion to sever the claim against Whitin and transfer it to Massachusetts. The trial court opinion relied on Fed.R.Civ.P. 21, which provides in part: "Any claim against a party may be severed and proceeded with separately." The Court continued:

> "There are occasions where the last sentence of Rule 21 may properly be used to sever a claim that has been properly joined. 'Even where the venue is proper as to all of the joined claims, and the forum is a convenient one for some, but not all, of the claims, the court might properly sever and transfer certain of the claims to a proper and more convenient forum.' Moore's Federal Practice, Vol. 3, pp. 2910, 2911." 204 F.Supp. at 141.

Neither the trial court nor the appellate court in Leesona v. Cotwool, however, focused its attention upon the precise language of 1404(a) providing for transfer of a "civil action." It is certainly not obvious that "claim" is equivalent to "civil action" for this purpose, so this Court finds itself confronted with a difficult problem of statutory construction.

Fed.R.Civ.P. 2 provides:

"There shall be one form of action to be known as *"civil action."* (emphasis added)

Furthermore, Fed.R.Civ.P. 3 provides that:

"A *civil action* is commenced by filing a complaint with the court." (emphasis added)

Reading Section 1404(a) in conjunction with the language of the Federal Rules seems to mandate the conclusion that transfer is available only when the entire action set forth in the complaint as filed with the Court can properly be transferred.[19] Such a restrictive interpretation would bar severance and transfer both of unrelated claims against the same defendant and of related claims against multiple defendants. Under the liberal federal joinder provisions it would enable unscrupulous plaintiffs to join a claim or a party merely for the purpose of blocking a transfer to a forum which would be overwhelmingly more convenient and which would promote the interest of justice. The broad remedial and discretionary approach of 1404(a) certainly should not be allowed to be frustrated by such an harassing tactic, although I emphasize that the record before me is entirely free of evidence of such intent.

Similar concern over a restrictive interpretation of "civil action" was voiced by the Court in Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). In that case six of the eight defendants in two class actions moved to sever and transfer. The Court decided, in part:

> "On this appeal, plaintiffs argue that a District Court may not sever the claims against properly joined defendants in order to permit transfer of the action against the remaining defendants to a more convenient forum in which venue would not have been proper as to the severed defendants." (the Court then quoted 28 U.S.C. § 1404 (a)) "Plaintiffs contend that 'civil action' as used in this section must be interpreted as 'the action as originally brought,' and that a district court may not sever properly joined claims in or-

---

19. As noted in Ex Parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), the draftsmen of the 1948 revision of the Judicial Code (of which § 1404(a) was a major revision) had the terminology of the federal rules in mind:

*"The reviser's notes make clear that the phrase was substituted for 'suit,' formerly used in various venue statutes, in the light of Federal Rules of Civil Procedure Rule 2 \* \* \*."* 337 U.S. at 58 n. 6, 69 S.Ct. at 946.

der to transfer the remainder of the action. We agree that this section authorizes the transfer only of an entire action and not of individual claims. However, we do not agree that an entire action must mean the action as originally brought. Where certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the District Court may, pursuant to Section 1404(a), transfer certain of such separate actions while retaining jurisdiction of others." 398 F.2d at 618.

The Court continued as follows:

"We believe that where the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which formed the main subject matter of the action." 398 F.2d at 618.

Thus the Second Circuit seems to recognize that in appropriate circumstances a Court may sever and transfer either: (1) the entire complaint as it relates to some of the defendants; or (2) part of the complaint as it relates to all defendants.

■ That view commends itself to this Court for the reasons set forth above, and I therefore hold that this Court possesses authority to transfer this action insofar as it relates to thirty of the forty-nine defendants, if "the convenience of parties and witnesses" and "the interest of justice" demand it.

■ That there will be inconvenience to some of the parties herein regardless of where this litigation goes forward, cannot be doubted. It is clear that this court has the burden of deciding, however, whether the balance of convenience and justice strongly favors a § 1404(a) transfer. In ruling on a *forum non con-* *veniens* motion, the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), set down a test which has survived the subsequent enactment of § 1404(a). In the language of the court:

"But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843.

The difficulty of applying this first-in-time standard to the instant case is that it was begun by Leesona after the same issue of royalty payments had already been raised by Leesona in a counterclaim in Kayser-Roth's New York suit. Thus the weight to be accorded Leesona's choice of a Rhode Island forum is diminished by the defendants' choice of a New York forum in an earlier suit in which Leesona appears to this court to have been obliged to raise the issue of its right to royalty payments, by means of a compulsory counterclaim under Fed.R.Civ.P. 13(a), or else waive that claim. In response Leesona claims that the defendants' choice of the New York forum should not be considered significant because that forum is an "unnatural" one, having little connection with the litigation. While it appears that none of the patented machines are used or located in New York, it further appears to this court that the institution of suit in New York was not vexatious or "unnatural", that a substantial number of these defendants' prospective witnesses and records may be located at defendants' offices there, and that the defendants' choice of New York as a forum to adjudicate the parties' respective rights under the patents must be given due consideration.

I now turn to those particular factors of convenience and justice which are present in this case and which I think are significant enough to deserve consideration.

### Convenience of Witnesses

■ I find unconvincing the argument that New York is a much more conven-

ient forum for presenting the witnesses who may be called in trial of this action. Defendants assert that all their witnesses will come from New York and points south of New York, while it appears that plaintiff's probable witnesses are residents of Rhode Island. I find that the additional two hundred miles which defendants' witnesses will have to travel, if trial of this case remains in Rhode Island, is insignificant in terms of additional expense, cost, or time, and therefore lends no support to the motion to transfer.

*Progress of Pending Action in New York*

I find the argument that the New York litigation has already made significant progress simply unsupported by the facts. While the actions filed in the Eastern District have been consolidated for discovery, the only fruits thereof at this time are a two-day deposition of one of Leesona's officers, a brief inspection by certain defendants of some of Leesona's records, partial answers to interrogatories, and a preliminary schedule for discovery. The New York court is really not terribly closer to trial of the royalty question than is this court. Additionally, the New York action has recently been reassigned to a judge who does not have the familiarity with the proceedings thus far which might otherwise favor transfer.

*Interruption of Plaintiff's Business*

Mr. Robert Leeson, Chairman of the Board of Directors of Leesona, has submitted an affidavit in opposition to transfer in which he contends that in prior unrelated litigation in the Eastern District of New York, Leesona's business was seriously interrupted by the necessity of transporting key personnel and records to Brooklyn, and that transfer

here would probably produce even greater disruption. Conceding this to be true, this court is unable to see why the same would not be true of those defendants who would be forced to transport their company employees and records to Providence, and more especially so, since there are forty-nine of them.

*Single Adjudication as to All Defendants*

Leesona's argument on this point is that it brought suit in Rhode Island because only here could all defendants be joined in a single action. Furthermore, Leesona contends that this suit can dispose of all issues presently before the New York court. Its reasoning is as follows:

1) The license agreements are put in issue directly, by Leesona's complaint herein;

2) The principle of *res judicata* requires defendants to raise the affirmative defense of patent invalidity or be precluded by the judgment of this court from litigating that issue in any other action; [20]

3) The issue of patent infringement would not survive a judgment of this court because either patent validity will be upheld, in which case plaintiff's remedy will be for recovery of past due royalties and not for damages from infringement, or this court will find patent invalidity, and therefore Leesona will have no claim against defendants;

4) Defendants can raise the antitrust claim here, if they want to.[21]

Thus, Leesona argues that the instant action can be dispositive of all issues between all parties. As to the infringement question, this court finds Leesona's reasoning faulty, for if this court went forward and found patent validity but

**20.** The license agreement provides in part: "The obligation to pay royalties at the rate here and above fixed by this agreement shall continue until the expiration of all said U.S. Patents Nos. 2,803,105, 2,803,108, and 2,803,109. If any such patent shall be held invalid by a decision of any court of competent jurisdiction not appealed from, then for the purposes of this paragraph such patent shall be deemed to have expired on the date of such decision."

**21.** See 15 U.S.C. §§ 15 and 22 for venue of antitrust actions against corporations.

also found the license agreements unenforceable, Leesona would still pursue its remaining basis of recovery—a claim for infringement. Since Rhode Island would not be proper venue for a patent infringement action,[22] further litigation in another forum would be necessary. While no defense to the license agreements themselves has yet been raised, this court thinks that it would be shortsighted if it restricted itself to answers already filed. Furthermore, this court could not compel the parties to transfer the antitrust claims, which are based upon the factually closely-related issue of patent misuse. Thus Leesona's argument for consolidated trial in Rhode Island is weakened by the real possibility that a final judgment of this court, though binding upon all forty-nine defendants, could fragment the pre-trial discovery and the trial of claims which are so integrally related as to demand adjudication together. Yet if these were the only factors before the court, I would not find the convenience of a trial in New York compelling enough to support this transfer motion. However, there are two remaining considerations which this court finds overpowering.

### Duality of Litigation

As the actions here and in New York now stand, the two courts have been presented with several identical issues. Such a situation invites a diligent race to judgment by the party which favors determination by one court and a dilatory, delaying tactic of minimal compliance by the party favoring adjudication by the other forum. Duplication of effort is apparent and economy of litigation is undermined in that situation. Moreover if this case is transferred (as to thirty defendants) to the Eastern District of New York, that court will have before it all the issues between the parties. Concededly, Leesona may have to re-litigate certain issues decided in New York which are not binding upon those defendants who are not parties to the New York action. On the other hand, a finding of patent invalidity by the latter forum would be binding upon Leesona, who would then be estopped from further litigation on these patents. At any rate, this court thinks that as between one forum (here, Rhode Island) which has jurisdiction over all parties but can adjudicate only a portion of a group of closely-related claims, and a second forum (here, the Eastern District of New York) in which all claims can be heard, but only as to some parties, there is a strong preference for the latter, for the reasons already set forth.

### Documentary Evidence

All parties contend that their own records will be critical to the trial of the royalty claim, and I accept this as true. In particular, Leesona has contended that its pertinent records are all located in Rhode Island, and are contained in at least thirty-five file drawers. Transportation of these records to New York (and possible duplication thereof) would be costly and inconvenient. On the other hand, the thirty defendants against whom transfer would be available have no records in Rhode Island, and if this action were to proceed, they too would be faced with great cost and inconvenience. The differential effect of trial in New York instead of in Rhode Island, upon the factor of production of records lies in the burden of storage of those records. No defendant has an office or other facility in Rhode Island and therefore the problem of storage of voluminous files for the duration of a protracted trial will necessitate the rental of a warehouse or other floor space. In New York City, however, a majority of those thirty defendants already have office space, and Leesona has its own facility on Long Island, in which it may store its records. Therefore, the cost to the parties of maintaining material records within easy access of the courtroom is additional support for transfer to New York.

22. See 28 U.S.C. § 1400(b) for venue of a patent infringement action.

In granting this § 1404(a) motion insofar as it relates to thirty defendants, this court is troubled by two considerations which would, if proven, militate against transfer. First of all, while Mr. Leeson's affidavit recites that Leesona is being deprived of some two and a half million dollars per year in royalties until judgment is entered (assuming Leesona is ultimately successful), and that Leesona "is presently suffering severe problems with its cash position," this court finds it impossible to evaluate on the existing record, whether the possible deprivation of that amount of money poses a severe financial crisis to the continued operation of the corporation. If so, both Leesona's private interest, and the public interest of Rhode Island in this very significant member of the state economy, would warrant reconsideration by this court of its decision to transfer.

Assuming, arguendo, that such evidence were presented by Leesona, there is still no evidence that trial would be greatly delayed in New York. While I take judicial notice of the lengthy docket of the federal court for the Eastern District of New York I cannot assume that the case will take two years to come to trial, as has been argued, nor that the judge to whom the case has been assigned will refuse to grant the same kind of calendar preference to which I have previously committed myself in the instant case, should it be tried here.

Therefore, I grant the motion of thirty defendants to transfer this action as it relates to them, staying the execution thereof for a period of ten days so as to afford Leesona the opportunity to offer proof on the two issues last discussed for this court's consideration.

### Motion to Stay

Implicit in my granting of the motion to transfer as to thirty defendants is my granting of a motion to stay, as it relates to the remaining nineteen defendants herein (even though not all are moving parties). The considerations supporting this decision are the same as those upon which the motion to transfer is based.