**CURTIS, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**
and
**Subler Transfer, Inc., et al., Intervenors.**

**Civ. A. No. C–2480.**

United States District Court,
D. Colorado.
May 20, 1971.

Jones, Meiklejohn, Kehl & Lyons, by Arthur Ronald Hauver, Denver, Colo., Acklie & Peterson, by Richard A. Peterson, Lincoln, Neb., for plaintiff.

Richard W. McLaren, Asst. Atty. Gen., by John H. D. Wigger, Dept. of Justice, Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., for the United States.

Fritz R. Kahn, Gen. Counsel by James F. Tao, Geraldine R. Keyes, I. C. C., Washington, D. C., for the I. C. C.

Boyd, Blanshan & Sherman by William J. Boyd, Craig B. Sherman, Chicago, Ill., for intervening defendants Subler Transfer, Inc. and Refrigerated Food Express, Inc.; Stockton & Lewis by Truman A. Stockton, Jr., Denver, Colo., of counsel.

Ames, Hill & Ames by Harry C. Ames, Jr., E. Stephen Heisley, Washington, D. C., Stockton & Lewis by Truman A. Stockton, Jr., John H. Lewis, Denver, Colo., for intervening defendant Colonial Refrigerated Transportation, Inc.

Before LEWIS, Chief Circuit Judge, and CHILSON and DOYLE, District Judges.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Plaintiff, Curtis, Inc., seeks to set aside, vacate and annul orders of the defendant Interstate Commerce Commission granting certificates of public convenience and necessity to intervening defendants Refrigerated Food Express,

Inc., Subler Transfer, Inc., and Colonial Refrigerated Transportation, Inc. An injunction against issuance of the certificates is also sought. Plaintiff appeared as a protestant in the proceedings before the Commission which culminated in the issuance of the authority in question.

Jurisdiction is vested in this Court by 28 U.S.C. § 1336, and a three-judge court has been convened and has heard the matter pursuant to 28 U.S.C. §§ 2325 and 2284.[1]

Plaintiff asserts three major arguments:

(1) That the orders erroneously affirmed and adopted incorrect, misleading and prejudicial statements of fact contained in the report of the hearing examiner;

(2) that the orders deny plaintiff due process of law by subjecting it to the competition of three additional carriers before giving plaintiff the opportunity to meet the "performance report" requirements which the Commission previously imposed as a condition to the granting of plaintiff's conflicting authority;

(3) that the orders are not supported by substantial evidence and are, therefore, unreasonable, arbitrary and capricious.

■ Regarding the first assertion of plaintiff, our scope of review in this matter is such that if the Commission's actions are supported by substantial evidence on the record as a whole, incorrect, misleading and prejudicial statements of fact by the hearing examiner, *which are insubstantial* or which do not negate the substantiality of the Commission's actions, will not afford grounds for the relief requested.[2] Be that as it may, an examination of the record in this case reveals that many of the statements alleged to be incorrect are, when read in full context, not inaccurate and are supported by substantial evidence.[3]

■■ As to plaintiff's second assertion, plaintiff has not demonstrated that it has a right to be absolutely free from competition in order to be afforded the opportunity to meet any so-called "performance report" requirements imposed by the Commission.[4] As stated by the

---

1. There have been three separate hearings, two of which were had by the full panel.

2. *See* Denver & Rio Grande Western Railroad Co. v. United States, 312 F.Supp. 329, 332 (D.Colo.1970).

3. For instance, plaintiff states in it opening brief:

   The examiner's summary of this witness' testimony contains an erroneous and highly prejudicial statement with regard to Curtis' solicitation efforts. At sheet 12 of his report the examiner states that: "One time a representative of Curtis, Inc., lead witness to believe that it would soon be able to provide service to points in West Virginia, *but he never called again.*" (Emphasis supplied.) The record will be searched in vain for any evidentiary foundation for the latter portion of the examiner's statement. * * * In fact, exactly the contrary appears to be the case, since the witness testified, on cross-examination, to at least two separate solicitation calls, one in person and one by phone (Tr. 420).
   However, an objective examination of the Record indicates that the witness said:

   Well, *the last I spoke to Curtis*, a Mr. Innes, he had more or less led me to believe that everything wasn't set up yet [to provide service to West Virginia] and his expression was as soon as we get this thing off the ground, we will be calling you and will be able to take care of you.
   (Tr. 396) (Emphasis added.) From the emphasized portion of the statement itself, it may be inferred that Curtis never called back. No indication appears that the solicitation contacts admitted to by this witness on page 420 of the transcript transpired *subsequent* to the conversation with Mr. Innes.
   Further illustration and analysis of plaintiff's treatment of the facts in this regard is unnecessary.

4. The so-called "performance report" requirement is a requirement attached as a condition to the granting of a certificate of public convenience and necessity that the carrier submit a report to the Commission describing its operations in order that the Commission may evaluate the carrier's success in meeting shipper's needs and providing the services proposed

Supreme Court of the United States, it is error to hold

> that it is the "unvariable rule" of the Commission to grant existing carriers an opportunity to remedy deficiencies in service, and in holding that carriers have a property right to such opportunity before a new certificate may be issued upon a lawful finding of public convenience and necessity pursuant to the statute. The Commission's power is not so circumscribed. No such limitation has been established by the Commission's own decisions or by judicial determinations. It is, of course, true that the Commission should consider the public interest in maintaining the health and stability of existing carriers, see United States v. Drum, 368 U.S. 370, 374, 82 S.Ct. 408, 410, 7 L.Ed.2d 360 (1962); but it is also true that, upon the basis of appropriate findings, "the Commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service." * * *

United States v. Dixie Highway Express, Inc., 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639 (1967) (citation omitted).

In view of the absence of legal merit in plaintiff's first and second arguments, the only remaining issue which is properly before this Court is whether the Commission's actions are supported by substantial evidence in the record as a whole.

The test of substantial evidence sufficient to support a Commission finding has been defined as "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusions sought to be drawn from it is one of fact for the jury." Illinois Central R. Co. v. Norfolk & W. R. Co., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966). Moreover, "the possibility of drawing two inconsistent conclusions

from evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Denver & Rio Grande Western Railroad Co. v. United States, 312 F. Supp. 329, 332 (D.Colo.1970) (citing Consolo v. Federal Maritime Comm., 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); Illinois Central R. R. Co. v. Norfolk & W. R. Co., *supra*).

■ A review of the extensive record in this case does indeed reveal that the Commission had before it substantial evidence upon which to predicate its actions. Plaintiff attempts to refute the findings of the Hearing Examiner (subsequently adopted by the Commission) witness by witness (and there were over 60 witnesses). However, in almost every instance these attempts amount to efforts to equate controverted or disputed evidence on behalf of the applicants before the Commission with insubstantial evidence. This cannot be done.

For instance, plaintiff argues with respect to the testimony of the representative of Cameco, Inc.:

> Cameco has never utilized Curtis' service in spite of the fact that rates were furnished by Curtis upon request (Tr. 393; 465) and in spite of the fact that Curtis has solicited this traffic (Tr. 3099). The examiner's summary of the evidence in this regard is incorrect and manifests his obvious predilection to accept at face value the representations of the applicants to the exclusion of all evidence to the contrary. At sheet 28 of his report the examiner states, as a matter of fact, that "Various motor carriers *have not solicited shipper's traffic*" (Emphasis supplied.) As to Curtis, this statement is in error since the undisputed evidence of Curtis' operating witness shows that Cameco's traffic has been solicited without success (Tr. 3099).

---

in its application for a certificate. *See* Refrigerated Transport Corp. Extension —Missouri Origins to Arkansas, Okla-

homa and Kansas, No. MC–123393 (Sub-No. 102) (I.C.C. Feb. 8, 1968).

Plaintiff's Opening Brief, at 39–40. However, examination of the transcript reveals that requesting and obtaining Curtis' rates were done as part of the company's new transportation manager's job "to get rates from all carriers that go to all markets, which also include the area that we are talking about here and now." (Tr. 466–67). Also, the witness representing Cameco testified as follows:

Q (By Mr. Peterson) Do you know whether or not representatives of Curtis, Incorporated have contacted Mr. Addeo in solicitation efforts, other than the furnishing of the tariff he requested?

A To the best of my knowledge they have not. Mr. Addeo has been in our employ only for approximately seven to eight weeks, and prior to that they have not contacted us. I know that, because I saw them all before that.

(Tr. 466). Despite the fact that Curtis produced contradictory testimony from its own witness, the above constitutes substantial evidence supporting the examiner's finding in this specific instance.

Elsewhere in plaintiff's lengthy factual arguments, conflicts in the evidence are explicitly pointed out, but plaintiff fails to view these conflicts as this Court must under the substantial evidence test:

[Regarding J. Lowenstein & Son and Puritan Beef] These shippers' only comments with regard to Curtis was the allegation that it had not solicited their business (Tr. 703). At the September hearing the Curtis witness testified that the business of these companies had been solicited repeatedly but that no traffic had been tendered. In spite of this *fact*, Curtis intends to continue its solicitation efforts (Tr. 3117).

Plaintiff's Opening Brief, at 51 (emphasis added.) It is clear that such conflicts in the testimony must be resolved by the trier of fact. *See also* note 3, *supra*.

It is unnecessary to illustrate further in specific terms the analytical weaknesses in plaintiff's treatment of the extensive testimony contained in the record. It is sufficient here to observe that many of the witnesses (representatives of shippers) supporting the applications testified that they were in need of a dependable, scheduled, less-than-truckload service to many points in the Midwest, and such service was presently unavailable to them. Curtis claims to be either ready, able and willing to provide such service, or at least capable of developing such service, given what they call an adequate opportunity. However, there is evidence in the record, which is substantial in terms of the standard being applied here, that these shippers either were not solicited by Curtis or did not use Curtis' services for reasons which may be inferred to have something to do with their view of Curtis' adequacy to fill the needs which they described. The Commission legitimately found that Curtis and other protesting carriers are not adequately filling the needs of the shipping public concerned here, and they legitimately found the needs to exist.

Witnesses also described a need for carrier services which are much more broadly based than Curtis, both in terms of the territory authorized to be served and the commodities authorized to be transported.

In summary, then, it appears to us that the particular structure of the case being one which involves less than truckload service and perishables, covering a very extensive, densely populated geographic area, that several certificate holders would appear, on the surface at least, to be needed in order to adequately service the numerous shippers involved. Thus, it becomes most difficult for a single shipper like Curtis to exclude others.

In conclusion, then, the orders of the Commission seem generally reasonable and well founded. The orders of the Commission are affirmed and approved.