**In re YARN PROCESSING PATENT VALIDITY LITIGATION.**

**No. 82.**

Judicial Panel on Multidistrict Litigation.

March 22, 1972.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

OPINION AND ORDER

PER CURIAM.

*Preliminary Proceedings Before the Panel*

The question whether to transfer this unusually important litigation was first

presented to the Panel on a motion filed by Celanese Corporation ("Celanese" hereinafter) for an order transferring most of these thirty-five actions in 4 districts [1] to the Southern District of Florida for pretrial proceedings. Without explanation of the reasons, this motion was withdrawn by Celanese. Because of the apparent importance of the question of transfer to the parties, witnesses and to the administration of justice an Order to Show Cause why the thirty-five actions, listed in Schedule A hereof, should not be transferred to a single district for coordinated or consolidated pretrial proceedings, under § 1407, Title 28, U.S.C., was issued by the Panel. Pursuant to the Order to Show Cause the questions whether and where to transfer were briefed and argued before the Panel.

There was agreement among most and perhaps all the affected parties that the actions should be transferred under § 1407 to a single transferee district for pretrial proceedings, and indeed for trial of all actions triable in the transferee district, because of original filing therein, or prior or anticipated transfer thereto under § 1404(a), Title 28, U.S.C.

*Multidistrict Nature of the Litigation*

The litigation is multidistrict litigation within the definition of § 1407. It involves litigation pending in four districts involving common questions of fact. The transfer of the litigation to a single district for consolidated or coordinated pretrial proceedings "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

*Unusual Nature of the Litigation and Patents Involved*

The litigation is unusual, and its prompt disposition is urgent to commerce in the very important double knit yarn (sometimes "false twisting") industry, because it involves primarily the validity of 6 basic patents which presently dominate the double knit yarn industry.

The first 3 patents are usually referred to as the "single heater patents".[2] These patents involve methods and equipment to impart a texture to raw yarn by thermal processing of the yarn in one stage of heat treatment.

The second 3 patents are usually referred to as the "double heater patents".[3] These patents involve methods and equipment for processing the raw yarn in two sequential stages of heat treatment, the first of which corresponds to the process of the single heater patents.

Sometimes, but not always employed in addition to the single heater process and the double heater processes are the three "high speed spindle" patents.[4]

The inventors of five of the six single heater and double heater patents are Nicholas J. Stoddard and Warren A. Seem.[5] Stoddard and Seem, along with two other individuals, formed a partnership known as The Permatwist Company ("Permatwist" hereinafter), to which they assigned their patents. Permatwist subsequently assigned the five patents to the Leesona Corporation ("Leesona" hereinafter) which is owner of the three spindle patents. Some of the parties to this litigation allege that Permatwist retained the right to share in royalties received from licensees under the five patents and was given a voice in the for-

---

1. The motion did not include Leesona Corp. v. Custom Industries, Inc., M.D.N.C., Civil Action No. 6–236–6–70 and Leesona Corp. v. Duplan Corp., E.D.N.Y., Civil Action No. 70–C–1087.

2. Patent Nos. 2,803,105; 2,803,108; 2,803,-109, which will expire on August 20, 1974.

3. Patent Nos. 3,077,724; 3,091,912; 3,-472,011, which are scheduled to expire in 1980.

4. Patent Nos. 2,791,086; 3,044,247; 3,-134,218.

5. The sixth patent, one of the double heater patents, is Patent No. 3,472,011, originally issued to Ernest Scragg & Sons, Ltd.

mulation of Leesona's patent licensing policies.

Leesona later assigned the two double heater patents held by it to a third corporation, Lex-Tex, Inc., a North Carolina corporation, whose only stockholders are alleged to be general counsel to Permatwist and one of Leesona's outside patent counsel. Thereafter, the two double heater patents were reassigned to Lex-Tex, Ltd., a Florida corporation. These assignments were also allegedly subject to Permatwist's residual interest. Lex-Tex, Ltd., later acquired the third double heater patent and is engaged in the business of licensing these three patents to producers of textured yarn. It, too, is alleged to be solely owned by general counsel to Permatwist and patent counsel to Leesona.

The remaining parties to this litigation are mainly producers of textured yarn who at one time operated as licensees under the Leesona single heater patents and Lex-Tex double heater patents and are now attacking the patents and the licensing program. Several other plaintiffs have only recently begun to produce textured yarn and are seeking a declaration of the invalidity of some of the patents. Some, but not all, of the single heater and double heater patent licensees also employed the high speed spindle processes.

## I. Further Background of This Multi-district Litigation

Leesona has been engaged in litigation over these patents for some time. That litigation has a long and complicated procedural history, only part of which will be summarized here. The litigation began in August, 1969 when Leesona's licensees under the single heater and high speed spindle patents stopped royalty payments and sought to terminate the license agreements. The first suit by a licensee, Kayser-Roth Corporation, was filed shortly thereafter in the Eastern District of New York, seeking a declaratory judgment of non-infringement of the single heater patents. Other suits were soon filed in that district by other former licensees seeking similar relief. In June, 1970, all these actions were consolidated for pretrial purposes, first before Judge Dooling and upon his recusal before Judge Zavatt.

In the meantime, Leesona sued all of its licensees in the state courts of Rhode Island in October, 1969, seeking equitable relief including a construction of the licensing agreements and a declaration of the validity of the single heater patents. The defendants removed the action to the United States District Court, where it was dismissed for lack of derivative jurisdiction. Leesona Corp. v. Concordia Mfg. Co., 312 F.Supp. 392 (D.R.I. 1970). Leesona then filed a similar second suit, in the United States District Court for Rhode Island, requesting a declaration of the validity of the single heater patents.

At this point, with actions pending in Rhode Island and New York and an additional related action filed in the Western District of North Carolina, this Panel ordered the parties to show cause why all actions should not be transferred to a single district court for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407. Shortly thereafter the Rhode Island district court transferred Leesona's action against a number of licensee defendants to the Eastern District of New York, pursuant to 28 U.S.C. § 1404(a), and stayed the Rhode Island action as to the few defendants whose cases could not be transferred under § 1404(a). Leesona Corp. v. Duplan Corp., 317 F.Supp. 290 (D.R.I. 1970). When a stay of proceedings pending disposition of the New York cases was also entered in the North Carolina case, the Panel vacated its Order to Show Cause. Since that time a number of additional related actions have been filed in the Eastern District of Pennsylvania, the Middle District of North Carolina and the Southern District of Florida.

## II. *Actions Now Pending and Proceedings Therein*

As noted above the twenty-four actions by former licensees pending in the Eastern District of New York have been consolidated for pretrial purposes.[6] An amended complaint has been filed on behalf of all plaintiffs against Leesona, seeking a declaratory judgment of the invalidity, noninfringement and unenforceability of the three single heater and three spindle patents. This amended complaint also asserts a claim for relief under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, alleging a conspiracy by Leesona and others to restrain and to monopolize interstate trade and commerce in the sale of "false twisting" machinery and processes. In the amended complaint Leesona is alleged to have acted with certain foreign and domestic companies and individuals to pool their "false twist" patents, to cross-license illegally those patents and to leave Leesona in control of the licensing of and royalties received from the patents. Lex-Tex is named as one of the co-conspirators but has not been made a party defendant, for reasons discussed hereinafter. The five infringement suits brought by it under one of the double heater patents in the Southern District of Florida, mentioned hereinafter, are alleged to be brought in furtherance of the alleged conspiracy.[7]

The New York plaintiffs state that they have spent a total of "250 man days" (not 250 days) in discovery and have examined over 200,000 documents. They have taken one deposition, that of Leesona's chief patent counsel, and have begun depositions of the partners of Permatwist. However, Leesona the defendant has engaged in no discovery, although much is anticipated, and at the first pretrial conference before Judge Zavatt on September 24, 1971, it was concluded that at least an additional year of discovery was required before a meaningful trial date could be discussed.

The Eastern District of Pennsylvania action was brought in 1970 by Sauquoit Fibers Co. ("Sauquoit" hereinafter), another former licensee of Leesona, against Leesona, Permatwist and the individual partners of Permatwist. The complaint seeks a declaration of the invalidity of the single heater patents and also includes one of the double heater patents in its allegations of patent misuse.[8] As a second cause of action, Sauquoit alleges that the defendants have conspired to violate Sections 1 and 2 of the Sherman Act by their conduct with respect to these patents.

Discovery in the Eastern District of Pennsylvania actions has been narrowly limited to issues presented by two motions for summary judgment. One motion is made by plaintiff Sauquoit for summary judgment on the issue of validity of the three single heater patents. The other motion is as made by defendants Permatwist and its individual partners for summary judgment on the ground that they have assigned all their interest in the patents to Leesona. Prior to the filing of the *Celanese* action in Florida, a third motion was filed by Leesona in the Eastern District of Pennsylvania action requesting the transfer of Sauquoit's claim against it to the Eastern District of New York or, alternatively, a stay of the proceedings pending disposition of the New York cases. These motions have neither been fully briefed nor submitted to the court for decision.

---

6. These cases are now assigned to the Honorable Joseph C. Zavatt of that district. The action transferred from Rhode Island, Leesona Corp. v. Duplan Corp., E.D. N.Y., Civil Action No. 70–C–1087, has not been consolidated with these actions.

7. Leesona has asserted several antitrust counterclaims in this action alleging a conspiracy among the plaintiffs to breach their licensing agreements and boycott Leesona's licensing program and to induce others to do so. Plaintiffs are also alleged to have conspired with the purchasers of the textured yarn by buying machinery competing with Leesona's from sellers designated by the yarn purchasers.

8. Patent No. 3,091,912.

Two of the three actions pending in the Middle District of North Carolina are also brought by former licensees of Leesona, namely Texfi Industries, Inc., and Universal Textured Yarns. The complaints name both Leesona and Lex-Tex as defendants and ask a declaration of the invalidity of two of the double heater patents.[9] Both plaintiffs are also plaintiffs in the consolidated New York action and, in addition, Universal Textured Yarn is the defendant in an infringement action filed by Lex-Tex in Florida. Lex-Tex has filed motions to dismiss both these actions as to it. The third North Carolina action is brought by Leesona for infringment of one of its high speed spindle patents.[10]

The remaining six actions are pending in the Southern District of Florida, and assigned to Judge C. Clyde Atkins. Five of them were brought by Lex-Tex in 1971 against various defendants for infringement of one of the double heater patents.[11] One of the defendants, Concordia Manufacturing Co., Inc., has interposed an antitrust counterclaim to Lex-Tex's allegations of infringement. Two other defendants, Hialeah Knitting Mills, Inc., and Leumas Knitting Mills, Inc., have alleged the misuse and unenforceability of the double heater patent relied on by Lex-Tex.

The sixth action in the Southern District of Florida was filed in June of 1971 by Celanese and Fiber Industries, Inc. The complaint names Leesona, Lex-Tex, Permatwist and its individual partners as defendants and seeks a declaratory judgment of the invalidity of both the single heater and double heater patents. However, it contains no mention of the high speed spindle patents. Some discovery was accomplished in this action before it was consolidated with the other five actions in the Southern District of Florida and further discovery stayed pending the action of this Panel. These six actions in the Southern District of Florida were originally brought before the Panel in a motion filed by Celanese, requesting transfer of most of these cases[12] to the Southern District of Florida for pretrial proceedings on issues limited to the validity of the single and double heater patents. The motion was later withdrawn without explanation and an Order to Show Cause was then entered by the Panel affecting all thirty-five actions in four districts now under consideration.

III. *Decision on the Question Whether to Transfer*

██ The existence of common questions of fact in these cases is established by the background already recited. The recurring question of the validity of each one of the patents in issue will present common issues of fact. In addition, there is an important factual interrelationship between the validity of the single heater and double heater patent groups since one (or more) of the single heater processes is apparently the first step in the double heater processes. To allow the litigation to proceed independently in more than one district on the issue of the validity of the patents would result in repetitive discovery and a needless duplication of effort. Further, under the decision of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), it is desirable that all interested parties be allowed to participate in the initial pretrial proceedings including disposition of the motions for summary judgment on the validity issues. And pretrial of misuse, unenforceability and the similar antitrust issues raised by some of the complaints, answers and counterclaims will result in the exploration of a common factual background concerning the alleged misuse and enforceability of these patents. For all these reasons, the prompt assignment of the pretrial of these cases to a single judge is desirable and necessary for the convenience of

---

9. Patent Nos. 3,091,912 and 3,077,724.

10. Patent No. 3,044,247.

11. Patent No. 3,091,912.

12. See Footnote 1.

the parties and witnesses and to assure the just and efficient conduct of the litigation. With some minor qualifications this conclusion is not controverted.

The only party with differing views concerning the need for transfer is Sauquoit. Sauquoit requests that transfer be deferred pending decision by the district court on the motions for summary judgment in the Eastern District of Pennsylvania. Celanese favors immediate transfer but contends the early disposition of the issue of the validity of the single and double heater patents is the key to the litigation, and wants to assure its expeditious determination by excluding from the transfer or by deferring disposition of all antitrust claims and the patent claims concerning the high speed spindle patents. Neither of these qualified contentions are acceptable. Although the general concept of separate trial of patent validity and antitrust issues may have validity in some circumstances (see, Components, Inc. v. Western Electric Co., Inc., 318 F.Supp. 959 (D.Me.1970); Manual for Complex and Multidistrict Litigation, § 4.3 at 56), it would be initially unwise to arrange that these factually related issues proceed in different districts, under 28 U.S.C. § 1407. The Panel's experience indicates it is best to place all actions before a single judge who can then decide on the most expeditious manner of preparing the cases for trial.

As stated above Sauquoit requests that any initial order of transfer specifically exclude its action because of the motions for summary judgment filed therein concerning the validity of the

single heater patents and Permatwist's interest in the patents. It contends that if it prevails on these motions it will have won a victory for all plaintiffs and that if it is unsuccessful it will at least have narrowed the issues.[13] We cannot agree to carve these vital common issues out of the litigation. The motions pending in Pennsylvania are of significance to all parties and all parties should have the opportunity to participate in the briefing and argument so that the issues may be fully and finally determined.

We have concluded that there should be an immediate transfer under § 1407 to a single transferee district to make possible consolidated or coordinated pretrial proceedings in the transferee district.

## IV. Decision on Selection of the Transferee District

The real dispute between the parties to this litigation concerns the selection of a transferee district. Leesona, Lex-Tex, Permatwist and its individual partners, along with plaintiffs Celanese and Fiber Industries, favor the Southern District of Florida. The New York plaintiffs, Sauquoit Fibers and the remaining parties urge selection of the Eastern District of New York.

The parties are agreed on the importance of placing these cases in a pretrial posture which will also make possible a decisive trial of the principal common issues in a single district. We have often stated that Sections 1404(a) and 1407 may be used together to achieve the just and efficient processing of litigation.[14] When a determination

13. At the hearing counsel for Sauquoit conceded that it was impossible to predict how long it would take to secure a decision of the motions, which are not fully briefed and have not been argued. Even if the motions were decided for Sauquoit the possibility of appeals would further delay transfer of the case. And in the event the patents were determined invalid by the Pennsylvania court, a further decision concerning the applicability of collateral estoppel under Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found., 402 U.S. 313,

91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) would be required. Leaving decision of these critical motions in the Eastern District of Pennsylvania increases the probabilities of conflicting decisions at the district and appellate court levels of that district and circuit and of the transferee district and circuit.

14. "Sections 1404(a), 1406(a), and 1407 are not mutually exclusive and, when appropriate, should be used in concert to effect the most expeditious disposition of

under Section 1404(a) has preceded the Panel's decision under Section 1407, we have shown deference to the district court decision. In re Master Key Antitrust Litigation, 320 F.Supp. 1404 (J.P. M.L.1971). And when, as here, our decision precedes some potential transfers under Section 1404(a), we believe it our duty to select the transferee district best able to serve as trial forum as well.

■ We are convinced that of the two proposed districts, the Southern District of Florida is better suited to pretrial and ultimate trial of the principal issues involved in the litigation.[15] Our summary of the underlying facts of this litigation indicates the importance of having Lex-Tex present as a party in order to secure a conclusive determination of all common issues. Lex-Tex is owner of all three double heater patents and is an alleged conspirator with Leesona and others to misuse and exploit these and other patents in a manner violative of the antitrust laws. In spite of its obvious importance as a necessary party to litigation finally disposing of the double heater patents, Lex-Tex has not been named a defendant in the Eastern District of New York. The briefs and arguments of the parties have created grave doubt whether it can be made a party defendant in that district for purposes of trial. Counsel for the New York plaintiffs conceded at the hearing that Lex-Tex was not named in the amended complaint because the plaintiffs initially doubted whether it could be sued there. And although they contend their doubts have lessened, they assert that several additional months of discovery is necessary before they can decide whether to add Lex-Tex as a defendant in New York. In the meantime discovery material to this question, conducted in litigation to which Lex-Tex is not a party is not usable against it. No such problem is presented in Florida, where Lex-Tex is incorporated and maintains its only office.

Transfer to Florida will be both for the convenience of parties and witnesses and the just and efficient conduct of the litigation. Although other districts may be more convenient to particular parties and witnesses, the transfer of this litigation to a single district for pretrial and trial of a substantial number of actions triable there is of such importance that it outweighs such minor inconveniences. The discovery completed in other districts will not be lost by the transfer to Florida, as the New York plaintiffs concede, and it seems clear that a great part of discovery remains to be completed.

Finally, we reject the argument of the New York plaintiffs that the earlier transfer under § 1404(a) of the Rhode Island case to New York supports transfer of all actions to that district. In reaching its decision, the Rhode Island court gave considerable weight to the objective of securing a single adjudication of the issues raised by the actions then pending. It concluded that while the issues of the licensees' patent infringement and Leesona's antitrust violations could not be decided in Rhode Island, all issues could be determined in

---

multidistrict litigation." In re Koratron Patent Litigation, 302 F.Supp. 239, 242 (J.P.M.L.1969) ; see, In re Grain Shipment Litigation, 300 F.Supp. 1402 (J.P. M.L.) ; In re Silver Bridge Disaster Litigation, 311 F.Supp. 1345 (J.P.M.L.)

15. It may be that certain of the actions, particularly Leesona Corp. v. Duplan Corp., E.D.N.Y., Civil Action No. 70–C–1087 and Leesona Corp. v. Custom Industries, Inc., M.D.N.C., Civil Action C–236–G–70, are not transferable to Florida under 28 U.S.C. § 1404(a). Nevertheless, all issues raised in these suits, as

well as many of the parties, are present in other actions and can be conclusively determined by pretrial and trial in Florida. The New York plaintiffs also argue that Permatwist and its partners may not be subject to the jurisdiction of the Florida court and note that these defendants have motions to dismiss pending in the Celanese action. They fail to explain how this problem would be obviated by transfer to New York, however, and we must conclude that the possible dismissal of these defendants is a risk present in both proposed transferee districts.

New York. Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 300–301 (D.R.I. 1970). The decision to transfer to New York, however, was reached before the Lex-Tex double heater patents were injected into this litigation. After the transfer to the Eastern District of New York of the Rhode Island cases, the New York plaintiffs filed their amended consolidated complaint naming Lex-Tex as a conspirator with Leesona in violating the antitrust laws, and the Florida actions concerning the double heater patents were filed. Because of these changed circumstances and because of the obvious interrelationship between the single and double heater patents, we think the decision of the Rhode Island court made before developments now before us can be given little weight in reaching our decision. In the present circumstances; the same considerations which lead the Rhode Island court to select New York as transferee forum compel us to select the Southern District of Florida.

In summary we conclude that the following considerations warrant the selection of the Southern District of Florida as the transferee district over the Eastern District of New York:

1. It is apparent that a speedy fully controlling determination of the validity and enforceability of each of the three single heater and three double heater patents, at least, is necessary and desirable. Because Lex-Tex, owner of the double heater patents, is a party in the Southern District of Florida and was not at the time of submission a party in the Eastern District of New York, there is no assurance that there could be a binding adjudication of the validity and enforceability of the double heater patents in actions triable in the Eastern District of New York. To say the least it is ad-

mittedly doubtful that Lex-Tex can ever be made a party defendant in the Eastern District of New York. Further, in failing to include all issues and all necessary parties in their cases, New York plaintiffs have failed to qualify as "early comers" to the litigation, if indeed being an "early comer" is a criterion for selection of the transferee district.

2. In the absence of Lex-Tex as a party defendant in the Eastern District of New York it is not presently possible to schedule speedy pretrial and trial of the validity and enforceability issues of the interrelated double heater and single heater patents in the Eastern District of New York. No one denies that the efficiency of the pretrial and early trial of all issues before a single judge and a decision binding on as many parties as possible is necessary in the interests of justice. *See, e. g.,* Butterfield v. Oculus Contact Lens Co., 332 F.Supp. 750 (N.D.Ill. 1971).[16] This is currently possible only in the Southern District of Florida.

3. Because of the doctrine of collateral estoppel applicable in patent validity actions (under Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, [91 S.Ct. 1434, 28 L.Ed. 2d 788] (1971)), it is peculiarly desirable that in such multidistrict patent litigation the transfer under § 1407 for pretrial proceedings be made to a district in which full pretrial and trial of the single and double heater patent issues can be completed and final judgment can be entered in a reasonable time, thereby concluding all issues and all patent owners if the patent

16. In the cited opinion, Judge Hubert Will, transferee judge in the Butterfield Patent Litigation, 328 F.Supp. 513 (J.P.M.L. 1968), determined the issues of validity, estoppel and marking in all cases where defendants were either located in the transferee district or consented to trial there.

is found invalid. Only in the Southern District of Florida can we say with assurance that this can be done.

4. Secondarily involved are the three high speed spindle patents, which some processors use. These patents are owned by Leesona, which is a party in the actions in the Eastern District of New York and the Southern District of Florida (as Leesona is also suable in the Southern District of Florida). If it is desirable to include the high speed spindle patents in the priority schedule for pretrial and trial in the Southern District of Florida, there are many ways in which this can be done with or without the approval of the transferee judge.

5. All relevant discovery on the common issues of fact heretofore had by plaintiffs in any cases in the Eastern District of New York can be readily made usable (even in respect to Lex-Tex) in all the actions by appropriate pretrial orders. Nothing discovered need be forfeited or lost, and no one will be penalized. In this connection, it is noted that defendants in those actions have reserved their privileges to make discovery and have made none.

6. We see nothing sinister in the fact that Celanese filed its action after unsuccessfully seeking to negotiate a license agreement. Nor do we see anything sinister in its bringing its action in the only jurisdiction, of those under consideration, in which it could establish without serious doubt jurisdiction and venue in respect to the owners of the single heater, double heater and the high speed spindle patents.

It is therefore ordered that all actions on the attached Schedule A (other than those now pending in the Southern District of Florida) be, and hereby are, transferred to the Southern District of Florida and, with the consent of that court, are assigned to the Honorable C. Clyde Atkins for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

### SCHEDULE A

**Southern District of Florida**

| | |
|---|---|
| Celanese Corp., et al. v. Leesona Corp., et al. | Civil Action No. 71–1026–Civ–CA |
| Lex-Tex, Ltd., Inc. v. Universal Textured Yarns, Inc., et al. | Civil Action No. 71–83–Civ–CA |
| Lex-Tex, Ltd., Inc. v. Concordia Manufacturing Co., Inc., et al. | Civil Action No. 71–84–Civ–CA |
| Lex-Tex, Ltd., Inc. v. Hialeah Knitting Mills, Inc. | Civil Action No. 71–385–Civ–CA |
| Lex-Tex, Ltd., Inc. v. Leumas Knitting | Civil Action No. 71–387–Civ–CA |
| Lex-Tex, Ltd., Inc. v. Universal Knitting Mills, Inc. | Civil Action No. 71–386–Civ–CA |

**Middle District of North Carolina**

| | |
|---|---|
| Universal Textured Yarns, Inc. v. Lex-Tex, Ltd., Inc., et al. | Civil Action No. C–38–G–71 |
| Texfi Industries, Inc. v. Lex-Tex, Ltd., Inc., et al. | Civil Action No. C–73–G–71 |
| Leesona Corp. v. Custom Industries, Inc., et al. | Civil Action No. C–236–G–70 |

**Eastern District of Pennsylvania**

| | |
|---|---|
| Sauquoit Fibers Co. v. Leesona Corp., et al. | Civil Action No. 70–1728 |

**Eastern District of New York**

| | |
|---|---|
| Kayser-Roth Corp. v. Leesona Corp., et al. (*) | Civil Action No. 69–C–1084 |
| Leesona Corp. v. Duplan Corp., et al. | Civil Action No. 70–C–1087 |

(*) Master case for 24 consolidated actions.

EDWARD WEINFELD, Judge of the Panel, with whom JOHN MINOR WISDOM and STANLEY A. WEIGEL, Judges of the Panel join, dissenting:

Various actions pending in four district courts are before the Panel on its order to show cause why they should not be transferred to a single district for coordinated or consolidated pretrial pur-

poses.[1] In all, there are thirty-five actions pending in four districts—twenty-five in the Eastern District of New York, one in the Eastern District of Pennsylvania, three in the Middle District of North Carolina, and six in the Southern District of Florida. The actions revolve about patents used in the processing of synthetic yarn and the manufacturing of machines for that purpose, and described as (1) the single heater patents,[2] (2) the double heater patents,[3] and (3) the spindle patents, related to false twist spindles and spindle drives for false twisting machinery (the Hilbert patents).[4] The patents are generally referred to as the "false twist" patents. False twisting is the most widely used method of texturizing yarn by means of thermal processing.

The issues in the various lawsuits include validity of the patents, infringement, patent misuse and antitrust violations. The actions, with related and assorted claims and counterclaims, present a classic case for transfer under section 1407(a). Indeed, all the contending litigants appear in agreement that the actions should be transferred for coordinated pretrial purposes, but disagree as to the district of transfer, and also as to whether the transfers should encompass all claims and counterclaims.

I agree with the majority determination that all claims and counterclaims should be transferred to a single district for coordinated or consolidated pretrial proceedings; however, I dissent from the transfer of the cases to the Southern District of Florida, where suits were filed only this year, instead of to the Eastern District of New York, where actions have been pending since 1969 and pretrial discovery and procedure has been carried on in substantial degree. In my view, transfer to Florida of the actions penalizes diligent litigants, rewards the latecomer, runs counter to the command of the statute that the transfers shall be "for the convenience of the parties and witnesses," and defeats rather than "promote[s] the just and efficient conduct of such actions."

## The Parties

The parties to the various litigations include Leesona Corporation (Leesona), the owner of the single heater and spindle patents, and alleged by a number of litigants to be the sole manufacturer in the United States of false twisting machinery; Permatwist Company (Permatwist), a partnership composed of original patent owners who reserved certain controls under the single heater and double heater patents and allegedly share in royalties received under Leesona's licensing program; Lex-Tex, Ltd., Inc. (Lex-Tex), a North Carolina corporation, subsequently incorporated in Florida under the same name and alleged to be a related or affiliated corporation of Leesona, from which it acquired title to the double heater patents; Celanese Corporation (Celanese), the most recent litigant, which seeks a declaratory judgment of invalidity of the false twist patents; licensees, processors of yarn, and others who instituted the first lawsuits attacking the validity of the patents and charge the patent owners and others with a continuing antitrust conspiracy and misuse of patents.

1. Previously, Celanese Corporation (Celanese) and Fiber Industries, Inc., plaintiffs in a Florida action, moved for an order under 28 U.S.C. § 1407 (except in an action pending in Rhode Island and one pending in North Carolina), but for reasons which do not appear withdrew their motion, following which the Panel issued the instant order to show cause.

2. Consisting of 3 patents, Nos. 2,803,105; 2,803,108; 2,803,109, which expire in 1974.

3. These consist of 3 double heater patents, Nos. 3,077,724; 3,091,912; 3,472,011, which remain in force, expiring in ten to fifteen more years.

4. Patent Nos. 2,791,086; 3,044,247; 3,-134,218.

## THE VARIOUS ACTIONS

### 1. Eastern District of New York (New York actions)

These are the earliest, the first having been commenced by a licensee against Leesona in August 1969. In all, there are twenty-four actions, which have been consolidated. A number of plaintiffs in the twenty-four consolidated actions were named as defendants in the remaining action commenced by Leesona in the District Court of Rhode Island, and transferred to New York, pursuant to section 1404(a) of Title 28.[5] The New York plaintiffs, formerly licensees under Leesona's false twisting licensing program, assert various claims against Leesona with respect to the patents, including invalidity, misuse, an antitrust conspiracy with other alleged conspirators, including Lex-Tex, plaintiff in five of the Florida actions, which actions are charged to be part of the continuing conspiracy. In essence, the plaintiffs in the New York actions seek a declaratory judgment declaring the patents invalid; also a judgment of non-infringement and unenforceability of the single heater and spindle patents, as well as relief under the Sherman Act. Leesona has counterclaimed, charging plaintiffs with a conspiracy among themselves, and to induce others, to breach their licensing agreements and to boycott Leesona's licensing program. Upon this record, there can be no question that with respect to the various issues presented in the different actions, the New York cases are the most advanced.

### 2. Eastern District of Pennsylvania

This action was commenced in June 1970, by Saquoit Fibers Co., a licensee, against Leesona, for a declaratory judgment that the single heater process is invalid. The complaint also contains charges of misuse, including the double heater patents, and antitrust violations by Leesona and Permatwist and its partners.

Plaintiff has moved for summary judgment declaring the single heater patents invalid and Permatwist and the individual defendants have moved for partial summary judgment on the ground that they no longer own the patents but the motions have not been argued. These, of course, can be heard and disposed of by the transferee judge.

### 3. Middle District of North Carolina

Three actions were commenced, the earliest in October 1970. Two plaintiffs (Universal Textured Yarns and Texfi Industries), licensees, have named Lex-Tex and Leesona as defendants and seek a declaratory judgment of the unenforceability of the Lex-Tex-Leesona licensing program and invalidity of the double heater patents. The two plaintiffs are also plaintiffs in the New York consolidated actions against Leesona, and one (Universal Textured Yarns) is named as a defendant in an action commenced by Lex-Tex in the Southern District of Florida. The third action in this district was commenced by Leesona against Customs Industries, Inc. for alleged infringement of one of the spindle patents.

### 4. Southern District of Florida

Six actions were commenced in this district, and in point of time they are the latest filed—from January 21 to June 1971. The last action was filed on June 28, 1971 by Celanese Corporation and Fiber Industries, Inc. against Leesona and Lex-Tex, and seeks a declaratory judgment of invalidity of the six single heater and double heater patents.

The other five actions were commenced by Lex-Tex, a Florida corporation[6] and assignee of Leesona patents, and charge various defendants (some plaintiffs in the New York action;

---

5. Leesona Corp. v. Duplan Corp., 317 F. Supp. 290 (D.R.I.1970).

6. It is alleged Lex-Tex was originally incorporated in North Carolina, but later moved to Florida and there incorporated, allegedly because the climate there was considered more receptive for favorable adjudication of patents. Affidavit of Phillips, p. 10.

one, as already noted, a plaintiff in an action in North Carolina), with infringement of one of the double heater patents. A defendant in one of those actions has interposed an antitrust counterclaim against Lex-Tex and others have asserted the unenforceability of the patent because of misuse by Lex-Tex. All the cases have been assigned to one judge.

Celanese, the latest entry in the controversies, joined Leesona and Lex-Tex in asking that all actions be transferred to Florida, but sought to limit the transfer to the single and double heater claims, and urged upon the Panel that the spindle patent claims and their related issues, as well as the antitrust claims be severed and transferred to another district, presumably New York.

Apparently there is more than meets the eye in Celanese's filing of its action in Florida for a declaratory judgment of invalidity, in close proximity to the filing by Lex-Tex of its actions in that district. The New York plaintiffs, the licensees, have charged that the suit was filed only after Celanese, Leesona and Lex-Tex[7] unsuccessfully sought to conclude an agreement which would have given Celanese a lower and discriminatory royalty rate than that granted to other licensees, and that the suit by Celanese and those by Lex-Tex in Florida are in fact in furtherance of a purpose to benefit Celanese at the expense of other licensees. Whether these claims are of substance or groundless, I am of the view that Celanese should not at this late hour be permitted to interrupt the orderly procedures which have gone forward in the New York actions for over two years. Whatever the merits of Celanese's position with respect to the patent it challenges, it can be readily advanced by participating in the current procedures in the consolidated New York claims.

I am persuaded a compelling case has been made that judicial economy, efficiency of administration and expeditious resolution of the issues presented by these litigations will most readily be achieved by a transfer to the Eastern District of New York, and that such a disposition will most effectively and speedily terminate these complex and complicated litigations. That district is the most convenient for the witnesses, parties and counsel.

The deposition and discovery process has moved forward there with dispatch. A comprehensive plan for consolidated discovery of the patent and antitrust issues was there developed under the guidance of District Judge John F. Dooling, to whom the cases were originally assigned for all purposes.[8] To date, the plaintiffs, initially under his supervision and later that of former Chief Judge Zavatt, have gone forward with the pretrial procedures on a broad front encompassing all issues. All parties can benefit from discovery thus far had in the consolidated New York actions.

The discovery process has to date resulted in the production of a massive volume of material and documents, all stored in New York, and the transfer of them from New York to Florida would impose an undue and unwarranted burden upon diligent litigants. Plaintiffs already have examined over 200,000 documents, including 300,000 pages, have copied 130,000 for use on the trial, have spent 250 man days in discovery and examination, and have taken more than 3,000 pages of testimony of witnesses, with examinations still in progress. The deposition of Leesona's chief patent counsel alone consumed twenty-four full day sessions in New York, and resulted

---

7. The doubt referred to by the majority that Lex-Tex, named as a conspirator in the New York actions, can be made a party-defendant in that district for purposes of trial is beside the point. Whether plaintiffs succeed or not in subjecting Lex-Tex to jurisdiction there, a transfer under Section 1407(a) of the Florida actions to New York will permit the depositions in all actions to proceed apace, no matter where the cases are eventually tried.

8. Judge Dooling later found it necessary to disqualify himself.

in 2500 pages of testimony, and is not yet completed. Depositions of three Permatwist partners have taken another fourteen days, with one deposition completed and those of two other witnesses scheduled for this past month, and may be in progress or have been completed at this writing. Chief Judge Zavatt has indicated he is ready and available to try the case whenever the parties have completed their pretrial discovery proceedings. A study of the voluminous record here presented fully bears out the statement of an attorney on the Steering Committee in the New York consolidated actions made before this Panel that he had "never seen a case that would constitute a model for multidistrict litigation or complex litigation that has moved along as effectively and as efficiently as the case in New York." [9]

In contrast, in the Florida action so recently filed, there has been comparatively little discovery, particularly so since dismissal was sought of the Celanese action by one defendant for improper service, lack of jurisdiction and improper venue, and also because stays of proposed depositions were granted. To date, document discovery has been meager and limited to a handful of documents located in the Lex-Tex office there, and depositions have only been scheduled but none taken. There is testimony that the total Lex-Tex files in its Florida office consist of one 12-inch drawer of a filing cabinet, only half of which is current, and obviously can be moved with slight, if any, inconvenience. Leesona maintains records pertaining to its six owned patents in Rhode Island, its principal place of business, and other records pertaining to patents in question are located at Permatwist's office in Philadelphia, and still other records are in New York. Leesona and Lex-Tex have failed to make any showing that any relevant records are in Florida.

It is of some significance that Leesona's action against sixty licensees, commenced in Rhode Island, the principal place of business of Leesona, was, on a section 1404(a) motion, transferred to the New York district.[10] Also of significance is that Leesona, in the Pennsylvania suit, moved to transfer that action under Section 1404(a) to the New York district;[11] further, that a number of Leesona's licensing agreements, no matter where entered into and regardless of where the licensees or Leesona do business provide that arbitration of disputes thereunder are to be conducted in New York. These factors strongly militate against Leesona's plea for transfer to Florida—if New York is a convenient district for Leesona for arbitration regardless of where the other disputants are located and also for a Section 1404 (a) transfer, it certainly is convenient for pretrial purposes of these actions.

The convenience of all litigants and witnesses dictates New York as the proper transferee district. The record here gives support to the licensees' charge that Lex-Tex, Ltd., a Florida corporation, is a nominal corporation, organized as a conduit to receive royalty payments; that it performs no substantial business of any kind in Florida; that its sole stockholders are two attorneys, one a resident of Washington, D.C., who represents Leesona in this litigation, and the other, general counsel to Permatwist, who resides in Philadelphia, Pennsylvania. With the exception of an attorney in Florida who is a nominal pres-

9. Hearing of Judicial Panel on Multidistrict Litigation, Oct. 29, 1971, p. 59.

10. In all, the claims against 30 defendants were transferred to the Eastern District of New York; the others, which were not transferable under Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) were severed and stayed. *See* Leesona Corp. v. Duplan Corp., 317 F.Supp. 290, 300 (D.R.I.1970).

11. I am not unaware of Leesona's contention that the motion was made before the Florida suits were commenced, but this circumstance does not down the basic facts upon which it applied for the transfer "for the convenience of parties and witnesses in the interests of justice . . . ."

ident and employee of Lex-Tex, no other person in Florida has knowledge of the basic facts upon which the various suits are grounded. Surely there is no basis for any rational claim that as to these attorneys Florida is a more convenient forum than New York. And any other persons, directors and officers of Lex-Tex having knowledge of the relevant facts are located or reside at places far more accessible and convenient to New York than to Florida.

As to Celanese, New York is the natural and most convenient district for transferee purposes. It maintains its principal place of business there; its house patent counsel, who are "of counsel" in the Florida action, are located in New York City, and Celanese and Fiber Industries trial counsel are located in Washington, D.C. Celanese conducts no yarn processing activities in Florida, and no New York plaintiff conducts yarn processing there. While the Florida plaintiffs asserted "many retired persons formerly employed by various parties (including Celanese) . . . now reside in the Southern District of Florida and are 'likely witnesses,' " with the single exception of one of the patentees who allegedly resides in Florida, whether as a permanent resident or transient vacationer is not stated, neither the names of the purported witnesses nor the nature of their testimony is stated.[12]

The New York plaintiffs either have their principal place of business in New York, or transact business or maintain offices there, and the majority there keep records relevant to the litigation. Most of the attorneys representing these litigants maintain offices there. These twenty-four plaintiffs are represented in the consolidated action by a Steering Committee of attorneys with offices in New York, Washington, D.C., and Greensboro, North Carolina. These attorneys, although widely separated, have functioned effectively as a team, have actively participated in the pretrial deposition discovery procedure in the New York district, and find it most convenient. Thus, in terms of actual experience extending over a two-year period, that district has been a satisfactory forum for the efficient conduct of the litigation. All parties, whatever the issues in their respective cases, have much to gain by a transfer to that district, and much to lose by a transfer elsewhere.

Surely we have an interest in avoiding repetitious and duplicative discovery.[13] With discovery in the most advanced state in the New York actions, and hardly off the ground in other districts, in the words of this Panel, "Judge [Zavatt's] familiarity with this litigation compels the selection of the District of [Eastern New York] as the only practical transferee forum at this time."[14] The transfer should be to that district.

12. *Cf.* Oil & Gas Ventures—First 1958 Fund Ltd. v. Kung, 250 F.Supp. 744, 756–757 (S.D.N.Y.1966); Strypek v. Schreyer, 118 F.Supp. 918 (S.D.N.Y.1954).

13. *Cf.* In re Frost Patent, 316 F.Supp. 977, 979 (J.P.M.L.1970); In re Gypsum Wallboard, 303 F.Supp. 510 (J.P.M.L.1969).

14. In re Frost Patent, 316 F.Supp. 977, 978 (J.P.M.L.1970).