### In re YARN PROCESSING PATENT VALIDITY LITIGATION.

#### MDL Docket No. 82.

United States District Court, S. D. Florida.

March 16, 1979.

C. Reed Guthridge, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., and Philip G. Koenig, Boston, Mass., for Leesona Corporation.

David Rabin, Greensboro, N. C., for Dow-Badische Co., National Spinning Co., Collins & Aikman and Glen Raven Mills, Inc.

Wallace D. Newcomb, of Paul & Paul, Philadelphia, Pa., for Collins & Aikman.

Henry Burnett, Fowler, White, Burnett, Hurley, Banick & Knight, Miami, Fla., for Macfield Texturing, Inc.

Daniel A. Kavanaugh, Miami, Fla., for ARCT and Barmag.

Charles B. Park, III, Charlotte, N. C., for American Barmag Corp. and Barmag.

Joell T. Turner, Bell, Seltzer, Park & Gibson, Charlotte, N. C., for American Barmag Corp. and Barmag Barmer Maschinenfabrik, A. G.

## MEMORANDUM OPINION AND ORDER ON COLLATERAL ESTOPPEL

ATKINS, Chief Judge.

The issue before this Court is whether a transferee court after a 28 U.S.C. § 1407 transfer may prohibit those defendants who have not joined in the action from asserting the defense of collateral estoppel upon those cases' remand to the transferor court. This Court holds that this restraint can be and is hereby imposed.

The unique facts and history of this case raise several important issues that relate to the use of collateral estoppel in complex multidistrict litigation, where a 28 U.S.C. § 1404(a) transfer is barred by the venue statute, but consolidation for trial may be preferable.

The original MDL 82 cases were transferred to this Court by order of the Judicial Panel on Multidistrict Litigation dated March 22, 1972.[1] The cases all involved the

James L. Armstrong, III, Smathers & Thompson, Miami, Fla., for Lex Tex Ltd., Inc.

1. 341 F.Supp. 376 (Jud.Pan.Mult.Lit.1972).

validity of one or more of 6 basic patents which dominated the yarn industry.[2]

The present round of infringement actions, none of which was among the original transferred cases, were brought by the plaintiff, Lex Tex, against the Throwsters,[3] several manufacturers and sellers following the decision of the Fifth Circuit Court of Appeals holding the patents unenforceable due to misuse. *In re Yarn Processing Patent Validity Litigation,* 541 F.2d 1127 (5th Cir. 1976), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977).

On October 4, 1978, the Court, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, ordered a bifurcated trial on the issue of purgation of the misuse found by the Court of Appeals. Subsequently, several of the Throwsters filed declaratory actions before this Court seeking a ruling that the misuse had not been purged. These cases have been consolidated for trial on the merits with the Collins & Aikman declaratory action, which was already before this Court.[4] Other Throwsters[5] and machinery manufacturers[6] involved in MDL 82 have chosen not to file declaratory actions before this Court, nor to be bound through stipulation to the results of this purge trial.[7] A hearing upon notice was held March 6, 1979, on the issue of whether these latter Throwsters and manufacturers would be precluded from asserting collateral estoppel against Lex Tex when those cases are remanded for trial in the event it is determined here the misuse found by the Fifth Circuit has not been purged.

This Court holds that those who do not participate for the trial before this Court, or do not agree to be bound by the result, are hereby precluded from obtaining the advantage of a favorable determination on the issue of purge by asserting the defense of collateral estoppel.

I.

In transferring the original actions to this Court, the Panel found this forum a preferable one to New York, since the transfer would enable all the cases to be disposed of completely and in an expeditious manner. At that time, the Panel contemplated that §§ 1407 and 1404(a) could be used in concert "to achieve the just and efficient processing of litigation." 341 F.Supp. at 381. The Panel made this finding despite its recognition that certain of the actions could not be transferred to the Southern District of Florida for trial due to the limitations of § 1404(a). The Panel went on to state, however, that "all issues raised in these suits, as well as many of the parties, are present in other actions and can be conclusively determined by pretrial and trial in Florida." *Id.* at 382, n.15.

■ As this case has progressed, and the parties to the action have changed, the limitation in the § 1404(a) venue statute allow-

---

**2.** The patents presently at issue are Nos. 3,077,-724, 3,091,912 and 3,472,011, which relate to the double heater process for producing synthetic yarn. For a further discussion, *see In re Yarn Processing Patent Validity Litigation,* 541 F.2d 1127, 1130–33 (5th Cir. 1976), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977), and the opinion of the Panel at 341 F.Supp. 376.

**3.** Producers of textured yarns.

**4.** *Collins & Aikman v. Lex Tex,* 76–6514–Civ–CA. The following declaratory judgment actions are presently before this Court: *J. P. Stevens v. Lex Tex,* 78–5001–Civ–CA; *Gold Mills v. Lex Tex,* 78–5009–Civ–CA; *Dow-Badische v. Lex Tex,* 78–5010–Civ–CA; *Monsanto Co. v. Lex Tex,* 78–5011–Civ–CA; *ARCT v. Lex Tex,* 78–5012–iv–CA; *Avtex Fibers v. Lex Tex,* 78–5013–Civ–CA; *Unifi v. Lex Tex,* 78–5014–Civ–CA; *Monsanto North Carolina v.*

*Lex Tex,* 78–5015–Civ–CA; *Burlington Industries v. Lex Tex,* 78–5016–Civ–CA; *Hoechst Fibers Industries v. Lex Tex,* 78–5017–Civ–CA.

**5.** Macfield Texturing, Glen Raven Mills, Mafco and National Spinning have not filed declaratory actions.

**6.** Barmag Barmer Maschinefabrick, American Barmag and Leesona Corporation.

**7.** Prior to the hearing on the issue of March 6, 1979, Mafco and Glen Raven Mills filed statements agreeing to be bound by the ultimate decision on the issue of purge before this Court. At a hearing on February 16, 1979, on another matter, National Spinning also agreed to be bound by the result in the consolidated purge trial.

ing transfer only to a district "where it might have been brought," has made it impossible to hear a consolidated purge trial that involves all the parties to MDL 82. The potential result of loss of judicial economy, inconsistent results and potential unfairness that might accompany piecemeal litigation of this issue is evident. The situation has been somewhat alleviated by the filing of declaratory judgment actions by several of the Throwsters and sellers. However, the Court is presently faced with the possibility that others are holding back, apparently, with the hope of later amending their answers to include the collateral estoppel defense on remand. To allow this would enable these non-participants to reap the benefit of a favorable determination while escaping the binding effect of an unfavorable determination, because should Lex Tex prevail on the merits, due process considerations would preclude it from asserting collateral estoppel against these defendants in the subsequent actions. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 327, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, n.7 (1979); *Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Whereas, these non-participating defendants could theoretically assert defensive collateral estoppel against Lex Tex should their fellow Throwsters prevail in the litigation under the rationale of *Blonder Tongue* and *Parklane.*

## II.

This Court is of the opinion that neither the policies expressed in the original transfer to the Southern District of Florida, nor the factors cited by the Supreme Court in *Blonder Tongue* and *Parklane* as central to application of the collateral estoppel doctrine would be well served by such a result. None of the relevant considerations including judicial economy, consistency in result, or fairness to the parties is advanced by allowing parties to the consolidated pretrial action to deliberately stand by while others litigate in their interest, in the hope of receiving additional opportunities to relitigate a question if decided adversely. These non-participants should not be permitted to seek a benefit from the risk and effort of others, without the risk of their own participation.

The Supreme Court in *Parklane* and *Blonder Tongue* indicated that in certain circumstances the mutuality doctrine should not be woodenly applied. In *Blonder Tongue* the Court spoke of a "trial court's sense of justice and equity," 402 U.S. at 334, 91 S.Ct. at 1445, while in *Parklane* the Court's central inquiry was into the "fairness" of the doctrine's application. 439 U.S. at 329, 99 S.Ct. at 650. *See* Restatement (Second) of Judgments (Tent.Draft No. 2, 1975) § 88. Underlying the "fairness" doctrine were the twin goals of judicial economy and consistent result. 439 U.S. at 329, 99 S.Ct. at 650. It is clear that in the present action, allowing these non-participants the opportunity to amend their answers at some later time to assert collateral estoppel would not be consistent with these underlying policies.

It is well recognized that the transferee judge under § 1407 has co-extensive power with the transferor judge. *In re Plumbing Fixture Cases,* 298 F.Supp. 484 (Jud.Pan. Mult.Lit.1968). The propriety of permitting a party to assert the defense of collateral estoppel is clearly a pretrial matter within this Court's discretion. *Cf. Allegheny Airlines, Inc. v. LeMay,* 448 F.2d 1341 (7th Cir.), *cert. denied* 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 553 (1971).